HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* TWIN BELL OIL SYNDICATE.

No. 170. Argued November 15, 16, 1934.—Decided December 3, 1934.

*Assistant Attorney General Wideman,* with whom *Solicitor General Biggs* and *Messrs. Sewall Key* and *J. P. Jackson* were on the brief, for petitioner.

*Mr. George H. Koster,* with whom *Mr. L. A. Luce* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

Under the Revenue Act of 1926 the taxpayer is entitled, in the case of oil and gas wells, to deduct from gross income an allowance for depletion. The relevant sections

314

of the Act are copied in the margin.[1]   The present litiga-
tion calls for decision as to the total allowance permitted

---

[1] Revenue Act of 1926, 44 Stat. 9, 14, 42.

TITLE II.—INCOME TAX.

* * * *

PART III.—CORPORATIONS.

* * * *

DEDUCTIONS ALLOWED CORPORATIONS.

SEC. 234. (a) In computing the net income of a corporation sub-
ject to the tax imposed by section 230 there shall be allowed as
deductions:

* * * *

(8) In the case of mines, oil and gas wells, other natural deposits,
and timber, a reasonable allowance for depletion and for depreciation
of improvements, according to the peculiar conditions in each case;
such reasonable allowance in all cases to be made under rules and
regulations to be prescribed by the Commissioner with the approval
of the Secretary.   In the case of leases the deductions allowed by this
paragraph shall be equitably apportioned between the lessor and
lessee; (U. S. C. App., Title 26, § 986).

TITLE II.—INCOME TAX.

* * * *

PART I.—GENERAL PROVISIONS.

* * * *

BASIS FOR DETERMINING GAIN OR LOSS, DEPLETION, AND
DEPRECIATION.

SEC. 204. (c) The basis upon which depletion, exhaustion, wear
and tear, and obsolescence are to be allowed in respect of any prop-
erty shall be the same as is provided in subdivision (a) or (b) for the
purpose of determining the gain or loss upon the sale or other disposi-
tion of such property, except that—

* * * *

(2) In the case of oil and gas wells the allowance for depletion shall
be 27½ per centum of the gross income from the property during the
taxable year.   Such allowance shall not exceed 50 per centum of the
net income of the taxpayer (computed without allowance for deple-
tion) from the property, except that in no case shall the depletion
allowance be less than it would be if computed without reference to
this paragraph.   (U. S. C. App., Title 26, § 935.)

and its apportionment between lessor and lessee where the income is derived from operation under an oil and gas lease.

During 1925, 1926 and 1927 the respondent, as assignee of the lessee named in an oil and gas lease, extracted substantial quantities of oil. By the terms of the lease and the assignment it was obligated to pay royalties in cash or in kind, totalling one-quarter of the oil extracted. The respondent claimed that the gross proceeds of all the oil produced should form the basis for the computation of the allowance for depletion granted by § 204 (c) (2), but the petitioner ruled that the deduction should be limited to 27½ per cent. of gross production less royalties paid. The Board of Tax Appeals sustained the ruling.[2] The Circuit Court of Appeals reversed the Board.[3] The case is here on writ of certiorari.[4]

The petitioner construes § 204 (c) (2) *in pari materia* with § 234 (a) (8), and asserts the percentage deduction permitted by the former is subject to the requirement of equitable apportionment between the lessor and lessee required by the latter. The respondent urges that § 204 (c) (2) is an independent and complete provision, to be applied without reference to § 234 (a) (8), and that to attempt to apportion the allowance granted by § 204 (c) (2) in the manner indicated by § 234 (a) (8) would violate the plain terms of the statute.

Reference to the structure of the successive income tax laws will aid in a solution of the problem. The Revenue Act of 1916[5] imposed an income tax by Title I. It divided the provisions as to tax into two parts, Part I on individuals, and Part II on corporations. In each part

[2] 26 B. T. A. 172.
[3] 70 F. (2d) 402.
[4] *Post*, p. 540.
[5] 39 Stat. 756.

the statute first lays the tax and in a subsequent section grants certain deductions, those enumerated in § 5 of Part I being available to individuals, and those specified in § 12 of Part II to corporations. Both sections include a reasonable allowance for depletion in the case of oil and gas wells. In the drafting of the Revenue Act of 1918 [6] a new arrangement of the subject matter was adopted. Title I is composed of definitions, Title II treats of income tax. Part I of this title consists of general provisions applicable alike to individual and corporate taxpayers. Sections under this part define taxable years and dividends, and § 202 prescribes the "basis for determining gain or loss," but makes no reference to depletion of mines, timber, or oil and gas wells. Additional sections have to do with inventories, net losses, and other general matters. Part II levies the tax on individuals, defines net and gross income, and in § 214 specifies the deductions allowed from gross income. The opening sentence of subsection (a) (10) is:

"In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted."

Then follow two provisos, one directing how cost shall be ascertained in the case of properties acquired prior to March 1, 1913, and the other allowing an alternative method of calculating depletion upon the basis of discovery value of mines and oil and gas wells. The paragraph ends with the sentence:

"In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

---

[6] 40 Stat. 1057.

In Part III, levying the corporation tax, § 234 (a) (9) allows a deduction for depletion in the identical phraseology employed with respect to individual taxpayers in § 214 (a) (10).

The same method was followed in the Revenue Act of 1921.[7] The general provisions contain no reference to depletion, but under Parts II and III of Title II the tax is fixed for individuals and corporations and the allowable deductions from gross income are set forth. The paragraphs of the prior Act as to depletion of oil and gas wells are literally reënacted, but there is inserted in § 214 (a) (10) as to individuals and § 234 (a) (9) as to corporations, an additional proviso with respect to discovery value.

In the framing of the Revenue Act of 1924[8] the same arrangement was observed. General definitions are found in Title I; Title II treats of income tax, and in Part I of that title are included general provisions applicable to both individual and corporate taxes. Amongst such general provisions in the earlier acts there had been a section entitled " Basis for determining gain or loss." In the 1924 Act the draftsman embodied paragraphs similar to those of the earlier act in § 204, but enlarged the caption to read " Basis for determining gain or loss, *depletion, and depreciation,*" and transferred to this section that portion of the depletion provision dealing with the basis of the allowance which had formerly appeared under the heading " Deductions " in Part II, Individuals, and Part III, Corporations. This added to the old § 204 a new subsection (c), which permits the use of cost or discovery value as the basis of depletion in the case of mines and oil and gas wells. Having transferred these provisions from §§ 214 (a) (9) and 234 (a) (8), respecting individual

---

[7] 42 Stat. 227.

[8] 43 Stat. 253.

and corporate deductions, there remained in those sections the language first found in the Act of 1918, above quoted, including the concluding sentence relating to equitable apportionment between lessor and lessee. The thought apparently was that the authority for the deduction should remain in the sections dealing with all deductions and the formulae for calculating the deduction should be relegated to a general provision applicable alike to corporations and individuals.

The depletion allowance based on discovery value was found difficult of administration, since it required a separate valuation of each well,[9] and was abandoned in the Revenue Act of 1926.[10] There was substituted a flat allowance of 27½ per cent. of gross income. In this Act the same arrangement was followed as in that of 1924. Under Title II, Income Tax, Part I was devoted to general provisions. As the basis for determining gain or loss, depletion and depreciation, had been embodied in § 204 of the general provisions of the Act of 1924, in which was the permitted use of discovery value as a basis for depletion, when that method was discarded in favor of the flat percentage of gross income it was logical to insert the substituted paragraph in the place where the discarded one had been. Thus we find the new formula inserted as paragraph (c) (2) of § 204. The authority for deduction of depletion remains where it has always been since the Act of 1918, namely, in § 214 (a) (9) of Part II, Individuals, and § 234 (a) (8) of Part III, Corporations, and naturally there still remains in these paragraphs the limitation that the allowance shall be apportioned between lessor and lessee.[11]

---

[9] See Senate Report No. 52, 69th Cong., 1st Sess., p. 17.

[10] 44 Stat. 9.

[11] In framing the Revenue Act of 1928 (45 Stat. 791) the draftsman reverted to an arrangement similar to that found in the Revenue Act of 1916. Thus under Title I an income tax is laid on both individuals and corporations, and in subsequent portions of the Act general pro-

This outline of the framework of the legislation demonstrates that Congress did not insert § 204 (c) (2) as an independent section *granting* an allowance or deduction for depletion. In the earlier Acts both the grant and the method of computation were embraced in a subsection under the title " Deductions." In the later Acts of 1924 and 1926 the grant remained in the deduction section and the taxpayer was referred to a general provision in § 204 for the method of ascertaining its amount.

Respondent emphasizes the last clause of § 204 (c) (2), which is: " except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph." It is argued that as this exception gives the taxpayer an option to compute the allowance either on the cost basis or by the flat percentage method, if he elects the former he proceeds under 234 (a) (8). Thus it is said that section applies only in case the cost basis is chosen. But an examination of the statute demonstrates the error of this position. No basis or formula for computation of the allowance is found in § 234; on the contrary all permissible procedures are covered by § 204, whether cost depletion of mines and oil

---

visions are contained. In this Act the deductions from gross income are found in § 23 under Part II, " Computation of Net Income," and the language of § 214 (a) (9) and § 234 (a) (10) of the Revenue Act of 1926 is found only in this section, applicable to both sorts of taxpayers, corporate and individual, as subsection (1). A new subsection (m) is added, which states: " The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114." Section 114 is found in Supplement B, and so far as material here is the same with respect to gas and oil wells as the analogous portions of § 204 (c) of the Act of 1926.

It is quite clear, therefore, from this cross-reference, that the framers of the Act understood the deduction was allowed by § 23 (1) but the method of calculating it was to be ascertained by reference to a general provision on that subject, § 114.

wells, paragraph (c); discovery value basis in the case of mines (c) (1); or flat percentage of gross income in the case of oil and gas wells (c) (2). If, therefore, the taxpayer does not compute under (c) (2) he must do so in accordance with the cost method prescribed by the earlier paragraph (c) of the same section, and not, as contended, under 234 (a) (8).

It follows that whichever method outlined in § 204 is chosen for computing the allowance granted by § 234, the deduction must be apportioned between lessor and lessee.

We come, then, to consider the propriety of the procedure followed by the Commissioner. What he did, in effect, was to treat the gross production less royalties as the measure of the respondent's depletable interest in the property, and the royalties as the measure of the depletable interest of those entitled to receive them. The respondent says, however, that under § 213 the gross production of the wells is respondent's gross income from the property, must be reported as such, and § 204 (c) (2) permits him an allowance of 27½ per cent. thereof. It must follow that the royalties (one-fourth of the same gross production) are gross income to those receiving them and are subject to depletion at the rate of 27½ per cent. The result would be a total allowance of 27½ per cent. of five-fourths of the total production. Certainly this would not be a single allowance, apportioned between lessor and lessee. And we think § 204 (c) (2) does not require such a result. The words used are, " the allowance for depletion shall be 27½ per centum of the *gross income from the property* during the taxable year." Is the italicized phrase synonymous with the taxpayer's gross income as defined in § 213? It cannot be if " property " signifies the tract of land in all its uses, others as well as the extraction of oil and gas. *Darby-Lynde Co.* v.

)

*Alexander,* 51 F. (2d) 56. The phrase, we think, points only to the gross income from oil and gas. Compare *United States* v. *Dakota-Montana Oil Co.,* 288 U. S. 459, 461; Greensboro Gas Co. *v.* Commissioner, 30 B. T. A. 1361. So restricted, it presents no difficulty where the owner of the land is also the operator, and there is none where the lessee turns over royalty oil in kind to the lessor, for the retained oil, in that case, is the base for the lessee's computation of depletion and the royalty oil that for the lessor's. We think Congress did not intend a different result where, as here, the lessee sells all the oil and pays over the royalty in the form of cash.

At all events, as the section must be read in the light of the requirement of apportionment of a single depletion allowance, we are unable to say that the Commissioner erred in holding that for the purpose of computation " gross income from the property " meant gross income from production less the amounts which the taxpayer was obliged to pay as royalties. The apportionment gives respondent 27½ per cent. of the gross income from production which it had the right to retain and the assignor and lessor respectively 27½ per cent. of the royalties they receive. Such an apportionment has regard to the economic interest of each of the parties entitled to participate in the depletion allowance. Compare *Palmer* v. *Bender,* 287 U. S. 551, 558.

The respondent insists that, so applied, the section may work unjust and unequal results; but it is to be remarked that this is likely to be so wherever a rule of thumb is applied without a detailed examination of the facts affecting each taxpayer. No doubt, as the petitioner points out, equally illogical results might ensue from the application of the section as the respondent construes it. And it is also to be remembered that depletion upon cost or March 1, 1913 value is optional with the taxpayer, if that procedure is more favorable to him.

Finally, the respondent says that in the Revenue Act of 1932[12] the section corresponding to 204 (c) (2) was amended so as to authorize such a procedure as the petitioner adopted in this case, and therefore the section as it stood in the Act of 1926 could not have supported the Commissioner's ruling. The amendment alters the section to read:[13] " In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year, *excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. . . .*" The petitioner says that the amendment was merely clarifying in purpose and declaratory of the existing law as administered. We think this is so. When it was offered the chairman of the committee having the bill in charge so stated,[14] and the conference report is to the same effect.[15]

The judgment is                                          *Reversed.*

---

[12] 47 Stat. 169.

[13] Section 114 (3), 47 Stat. 202.

[14] Cong. Record, Vol. 75, Part 10, pp. 11629–11630.

[15] House Conference Report No. 1492, 72d Cong., 1st Sess., p. 14.