## CANDLER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7595.

Circuit Court of Appeals, Fifth Circuit.

April 2, 1935.

Theodore B. Benson, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Helen R. Carloss, Sewall Key, and Norman D. Keller, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and W. F. Gibbs, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

Petitioner's claim that in computing his income taxes for the year 1924 he was entitled to deduct a loss on bonds of the Couch Cotton Mills, which he held, having been rejected by the Board of Tax Appeals, is brought here for review.

The Board based its decision on section 214 (a) (5), Revenue Act 1924, 26 USCA § 955 (a) (5), which provides for the deduction of losses incurred in transactions entered into for profit. Petitioner contends that the deduction claimed should have been allowed under section 203 (a), of the act, 26 USCA § 934 (a), irrespective of section 214 (a) (5) of the act, 26 USCA § 955 (a) (5), but he insists also that under the latter provision he was entitled to the deduction claimed, because he sustained the loss in question in a transaction entered into for profit.

In May, 1921, the Couch Cotton Mills, a corporation of which W. D. Couch was president and practically the only stockholder, was indebted to a bank of which petitioner was vice president in the sum of $232,-523.54, of which $214,000 was represented

by five notes, all indorsed by Couch, and all past due, except one for $50,000. The balance of the indebtedness was represented by overdrafts. Petitioner had no interest in the Couch Mills, but as vice president of the bank he had approved and recommended the above-mentioned loans. On May 27, 1921, he gave the bank his note for the aggregate amount of the Couch Mills notes and overdrafts, leaving its notes with the bank as collateral security for his note. In November, 1921, the Couch Mills exchanged for its notes its Series C bonds corresponding in amount with its debt which petitioner had assumed. These Series C bonds purported to be secured "by a deed to secure," but by their terms they were inferior to two prior series of bonds, and what the security was for any series is not disclosed. Petitioner, having paid off his note, acquired title to the Series C bonds theretofore held by the bank, which, after Couch Mills were placed in receivership, were ascertained to be worth about $25,000 in 1924, and probably never had any greater value. He testified that they were "very junior bonds," since "everything else came ahead of them." Upon being asked why he had given his note, he answered first and last, "Well it looked like it was a good piece of business, he [meaning Couch] was in bad shape. * * * Yes, [Couch was] about the sole owner [of the Couch Mills]. * * * This man got involved, I thought it was a good piece of business to help him out and extricate him from his trouble, and I thought I had been partly responsible for making these loans. * * * I felt sort of an obligation, having O. K.'d his paper. * * * The bank said something had to be done about it, and Couch couldn't do it, and I just took it over myself."

Section 203 (a) of the Revenue Act of 1924 (26 USCA § 934 (a) provides not for the allowance but only for the recognition of gain or loss as determined under section 202 (26 USCA § 933 and note) upon the basis prescribed by section 204 (26 USCA § 935 and note). These three sections taken together lay down the rules for calculating gain or loss, but deductions allowed for losses are enumerated and provided for in section 214 (26 USCA § 955 and note) as to individuals, and in section 234 (26 USCA § 986) as to corporations. Helvering v. Twin Bell Oil Syndicate, 293 U. S. 312, 55 S. Ct. 174, 79 L. Ed. ——. And so it follows that petitioner's first contention is untenable. His own testimony, taking it as a whole, was enough to sustain the Board's decision that the loss which he sustained as a result of his paying off the indebtedness of the Couch Mills was not incurred in a transaction entered into for profit. The conclusion was a reasonable one that he had no expectation of making a profit, but that he assumed the payment of the bank's loans to the Couch Mills only because he felt morally responsible to the bank for them, since they had been made by the bank upon his recommendation. So far we have assumed, as apparently the Board did, that the petitioner sustained a loss "upon the sale or exchange of property" within the meaning of section 203 (a) of the act (26 USCA § 934 (a), for which he would have been entitled to a deduction under section 214 (a) (5) of the act, 26 USCA § 955 (a) (5), if the loss had been incurred in a transaction entered into for profit. We are of opinion, however, that the petitioner's claim is in reality based on a bad debt. We say this, although the petitioner made no claim for deduction on account of a bad debt and is not in position to make such claim in this proceeding, since he did not prove that he had charged off the debt as wholly or partially worthless during the taxable year as required by section 214 (a) (7) of the act, 26 USCA § 955 (a) (7), Spring City Foundry Co. v. Commissioner, 292 U. S. 182, 54 S. Ct. 644, 78 L. Ed. 1200. Petitioner is not entitled to claim a loss sustained upon the sale of property, for he sold none. We are unable to see that he sustained a loss upon the exchange of property. All he acquired was a bad debt owing by Couch and his corporation. The notes were only evidence of that debt. The bonds received in exchange were also only notes and likewise evidenced the same debt of the same debtors. For all that appears, they have not been exchanged for any other property, but are still held and owned by the petitioner.

The petition for review is denied.