T.C. Memo. 1997-531


UNITED STATES TAX COURT


ROGER MULDAVIN, ET AL.,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 152-92, 153-92,          Filed December 1, 1997.
        23624-92, 23660-92.


Roger Muldavin, pro se.

Lynn M. Brimer, for respondent.


MEMORANDUM OPINION


TANNENWALD, Judge: Respondent determined deficiencies in

and additions to Federal income taxes as follows:

_____

    [1] The following cases are consolidated herewith for
purposes of briefing and opinion: Jean Muldavin, docket No. 153-
92; Jean and Roger Muldavin, docket No. 23624-92; and Jean and
Roger Muldavin, docket No. 23660-92.

Roger Muldavin

|  |  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6651 | Sec. 6653(a) | Sec. 6654 | Sec. 6661 |
| 1985 | $142,578.85 | $30,936.52 | $7,128.94* | $6,798.00 | $30,937.00 |
| 1986 | 113,423.25 | 21,292.62 | 5,671.16* | 4,177.00 | 21,293.00 |
| 1987 | 56,026.00 | 13,957.00 | 2,801.00* | 3,016.00 | --- |

*Plus 50 percent of the interest on $123,746.07, $85,170.25, and $56,026.00, for 1985, 1986, and 1987, respectively.

Jean Muldavin

|  |  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6651 | Sec. 6653(a) | Sec. 6654 | Sec. 6661 |
| 1985 | $143,618.85 | $31,196.52 | $7,180.94* | $6,858.00 | $31,197.00 |
| 1986 | 114,503.25 | 21,562.62 | 5,725.16* | 4,231.00 | 21,563.00 |
| 1987 | 56,026.00 | 13,957.00 | 2,801.00* | 3,016.00 | --- |

*Plus 50 percent of the interest on $124,786.07, $86,250.47, and $56,026.00, for 1985, 1986, and 1987, respectively.

Roger and Jean Muldavin

|  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6653(a) | Sec. 6661 | Sec. 6662 |
| 1988 | $19,935 | $997 | $4,984 | --- |
| 1989 | 26,302 | --- | --- | $5,260 |

This case was submitted by the parties fully stipulated under Rule 122.[2] The stipulation of facts and attached exhibits are incorporated herein by this reference. The submission was accompanied by a stipulation of settled issues and by an explanation by the parties that the sole issue for decision, with

---

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

the possible exception, according to petitioners, of jurisdictional matters, is whether petitioners are entitled to an oil depletion allowance in excess of 15 percent of their reported royalty income.

Background

Petitioners are husband and wife. They resided in Arcadia, Michigan, at the time the petitions herein were filed. They filed their Federal income tax returns at the Covington, Kentucky, Service Center.

Prior to petitioners' marriage, Jean Muldavin (Mrs. Muldavin) owned in fee simple a piece of property in Manistee County, Michigan (the property). On June 19, 1968, she entered into an oil and gas lease with J. L. Orr, whereby Orr as lessee had the exclusive right to produce oil on the property in exchange for which:

> The lessee shall deliver to the credit of the lessor as royalty, free of cost, in the pipe line to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option, may pay to the lessor for such one-eighth royalty the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line, or into storage tanks.

Subsequent to petitioners' marriage, Mrs. Muldavin transferred her interest in the property to Roger and Jean Muldavin as husband and wife. At some point, Shell Oil Company (Shell) became the successor in interest of J. L. Orr. On June 26, 1975,

petitioners' fractional interest in the oil produced and saved from the property was 79.39/80.00 of one-eighth royalty interest (or 0.1240468 in decimal).

During the years at issue, petitioners received and reported on their tax returns gross royalty income from the well identified as Muldavin 2-13 in the following amounts:

| Year | Amount |
|------|--------|
| 1985 | $598,561 |
| 1986 | 419,957 |
| 1987 | 287,085 |
| 1988 | 169,347 |
| 1989 | 157,944 |

In respondent's determinations, the foregoing amounts were reduced to take into account windfall profit taxes, depletion allowance at 15 percent, legal fees, and State severance taxes.

Discussion

In order to enable us better to focus on the question of the proper depletion allowance, we first address the following other issues raised by petitioners:

(1) They contend that our jurisdiction is defective because respondent lacked authority to issue the deficiency notices involved herein. Those assertions are similar to those raised by tax protesters which have been uniformly rejected by cases too numerous to cite. They are totally without merit.

(2)  They assert that three of the deficiency notices are untimely.  This contention is directly contrary to the stipulation of settled issues and, accordingly, is rejected.

(3)  They seek to have us reopen years prior to 1985 in order to give petitioners the benefit for those years of what they claim is more favorable treatment in the stipulation of settled issues for the years before us.  We reject this attempt for the simple reason that, in the apparent absence of any pending deficiency notices and petitions for the earlier years, we are without jurisdiction to deal with petitioners' assertions. We note in passing that it would appear that the period of limitations has long since expired in respect of any overpayments of taxes for those earlier years.

(4)  They seek to have us deal with levies and liens in respect of matters not involved in this proceeding and apparently relating to the windfall profit excise taxes for other years, in particular 1980.  Here again, we are without jurisdiction in respect of any such levies or liens.  Beyond this, we have no jurisdiction in respect of a year not before us[3] or in respect of

---

[3]  Sec. 6214(b) provides that we:

shall consider such _facts_ with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing _shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid_.

(continued...)

windfall profit taxes which are apparently not subject to an existing separate notice of deficiency. See Logan v. Commissioner, 86 T.C. 1222, 1225-1230 (1986). In this connection, we note that petitioners have offered no explanation which would indicate how any windfall profit taxes for earlier years would affect our determination of the taxes owed in respect of the years before us.

(5) They appear to be asking us to decide that they should not be considered in the category of producer for purposes of the windfall profit tax; that issue has previously been decided against them for the years 1980 through 1984 based upon the same documents relating to their arrangement with Shell as are involved herein. Muldavin v. Commissioner, T.C. Memo. 1991-481, affd. without published opinion 977 F.2d 582 (6th Cir. 1992). As far as we can determine, there were no changes between facts or law applicable to that case and those applicable herein with the result that petitioners would be collaterally estopped from relitigating the "producer" issue even if it were assumed to be within our jurisdiction. Commissioner v. Sunnen, 333 U.S. 591 (1948).

(6) They devote a considerable portion of their brief to asserting that there are facts relating to the windfall profit

---

³(...continued)
[Emphasis added.]

taxes paid by Shell which need to be established in order to determine the correct amounts attributable to petitioners. To the extent that petitioners may be questioning only the amounts allowed by respondent for such taxes in the years before us, separately from the depletion allowance, we note that no reference to this point was made in the submission of this case fully stipulated. Such submission precludes the use of further evidence by a party absent the consent of the other party and/or an appropriate order of the Court. Rule 143(b). The fact that the case was submitted fully stipulated does not relieve petitioners of their burden of proof as to facts necessary to sustain their position. See Meunier v. Commissioner, T.C. Memo. 1991-446. While the full impact of petitioners' assertions is not easily determined, we are satisfied that there are no extraordinary circumstances which would justify our reopening this fully stipulated case and ordering a trial.

To the extent that the facts and arguments which petitioners set forth are directed toward obtaining a decision from us that Shell withheld too large a portion of windfall profit taxes in respect of their share of the oil production, we simply have no jurisdiction to resolve this apparent dispute with Shell.

(7) They seek damages for alleged errors by respondent in the handling of their tax matters. The simple answer to this

contention is that we are without jurisdiction to consider their requests.

We now turn to an analysis of the issue as to whether petitioners are entitled to a depletion allowance in excess of 15 percent of their gross royalty income.

As we see it, there are two prongs to petitioners' position. First, they contend that, as owners of the land, they are entitled to the entire percentage depletion allowance given that Shell as an integrated oil producer is not entitled to such an allowance.  Second, they contend that their percentage depletion allowance should be calculated on the basis of the "market price"[4] as provided in section 1.613-3(a), Income Tax Regs.  For reasons hereinafter set forth, we reject both contentions.

Section 611(a) provides for a reasonable allowance for depletion in the case of oil wells.  Section 611(b) provides that "In the case of a lease, the deduction under this section shall be equitably apportioned between the lessor and lessee."  With exceptions not applicable to petitioners, the depletion allowance for oil wells is, with respect to a limited quantity of the taxpayer's average daily production of oil, 15 percent "of the gross income from the property excluding from such gross income

---

[4]  Petitioners set forth in their briefs extensive data related to this calculation.  Such data, however, is not evidence and, therefore, in any event would not be considered.  Rule 143(b); see also supra pp.6-7.

an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property".  Secs. 613(a), 613A(c)(1).

It has long been decided that the "gross income from the property" is the gross income from the property received by the taxpayer claiming the deduction for depletion.  Helvering v. Mountain Producers Corp., 303 U.S. 376, 382 (1938); Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312 (1934); McLean v. Commissioner, 41 B.T.A. 565, 575 (1940), affd. 120 F.2d 942 (5th Cir. 1941).  Accordingly, for purposes of computing the amount of average daily production to which the depletion allowance will apply, section 613A(c)(2) provides that the average daily production for a taxpayer with a partial interest is equal to the total production of the property times the taxpayer's percentage participation in the revenue from such property.

Applying the foregoing statutory provisions, it is clear that, where more than one taxpayer is involved, the depletion allowance for any one taxpayer cannot be calculated on the gross income from the property as a whole, since the allowance must be apportioned equitably in keeping with the respective interests of lessor and lessee.  Helvering v. Twin Bell Oil Syndicate, supra; Callahan Mining Corp. v. Commissioner, 51 T.C. 1005, 1020 (1969), affd. 428 F.2d 721 (2d Cir. 1970); cf. sec. 613A(c)(2).  Thus, petitioners' argument based on their title to the land is without merit.

It is equally clear the gross income used is the amount actually or constructively received by the taxpayer. <u>Helvering v. Mountain Producers Corp.</u>, <u>supra</u>. Thus, petitioners cannot claim depletion on another interest holder's gross income from the property, whether or not such taxpayer is entitled to a depletion allowance. The fact that Shell may be a major integrated oil producer precluded from using percentage depletion, see <u>Exxon Corp. v. Commissioner</u>, 102 T.C. 721 (1994), is beside the point, particularly since Shell is still entitled to a depletion allowance based on the cost method. Secs. 611 and 612.

In a similar vein, petitioners' arguments based upon the use of "market price" and its relationship to "controlled price" are also irrelevant, particularly in light of petitioners' efforts to reconstruct the price movements going back to 1980. Insofar as a "controlled price" is concerned, that phrase has no bearing in the years before us since Federal oil price controls were lifted in 1981. See <u>CanadianOxy Offshore Prod. Co. v. Commissioner</u>, 100 T.C. 382, 384, 387 (1993). With respect to "market price", we see no basis for applying such a standard herein. That standard, referred to as "representative market or field price", section 1.613-3(a), Income Tax Regs., applies to taxpayers, generally integrated producers, who do not sell their oil or gas in the immediate vicinity of the well and who thus must calculate

a gross income from the property which excludes amounts received for transportation or refining, etc. Petitioners do not fall within the category of an integrated producer. See Exxon Corp. and Subsidiaries v. United States, 88 F.3d 968, 970 (Fed. Cir. 1996); Exxon Corp. v. Commissioner, supra, and cases discussed therein.

Another of petitioners' arguments is that their lease agreement with Shell provides that petitioners should receive their royalty income "free of cost", which petitioners construe to mean that Shell should bear the liability for all taxes related to the lease, including those imposed on them. This argument fails because, whatever the scope of the phrase "free of cost", the agreement of one party to pay the other's taxes is not binding on respondent and does not alter liability for such taxes under the Code. Pesch v. Commissioner, 78 T.C. 100, 129 (1982); Neeman v. Commissioner, 13 T.C. 397, 399 (1949), affd. 200 F.2d 560 (2d Cir. 1952); Humbert v. Commissioner, 24 B.T.A. 828, 829 (1931).

Petitioners seek to share Shell's status as an integrated oil producer in order to be able to utilize a "market price" measurement for percentage depletion allowance but without regard to the fact that an integrated producer was not entitled to percentage depletion during the taxable years before us under section 613A (effective for taxable years commencing after

December 31, 1974) and without any corresponding adjustment to the amount includable in their gross income.  We are not prepared to accept petitioners' pick-and-choose approach.  Exxon Corp. and Subsidiaries v. United States, 88 F.3d supra, upon which petitioners rely in respect of the "market price" issue, dealt with the taxable year 1974[5] and with natural gas subject to a fixed contract, which continued to be entitled to percentage depletion under section 613A.  Such being the case and taking into account the circumstances of the case before us, we find it unnecessary to direct our attention to the seeming conflict in rationale between Exxon Corp. and Subsidiaries v. United States, 88 F.3d supra, and Exxon Corp. v. Commissioner, 102 T.C. supra, in respect of an allowance for depletion in excess of actual receipts under section 1.613-3(a), Income Tax Regs.  Additionally, we note that the failure to adjust the amount includable in gross income has been considered a significant element to be taken into account in respect of the attempt by taxpayers to increase the amount to which the depletion percentage should be applied.  See Exxon Corp. v. Commissioner, 102 T.C. at 735-737.

Petitioners' gross income from the property for purposes of the depletion allowance is their royalty income in the amount

---

[5]  The taxable year 1974 is a year prior to the statutory amendments which eliminated the allowance of percentage depletion to integrated oil producers.

that they received and reported on their returns.  We hold that the depletion allowance is 15 percent of those amounts.

To give effect to the parties' stipulation of settled issues and the above holding,

<u>Decisions will be entered under Rule 155</u>.