**SHERIDAN–WYOMING COAL CO., Inc.,
v. HELVERING, Commissioner of
Internal Revenue.**

No. 7768.

United States Court of Appeals for the
District of Columbia.

Decided Dec. 31, 1941.

Mr. Floyd F. Toomey, of Washington, D. C., with whom Mr. Ellsworth C. Alvord, of Washington, D. C., was on the brief, for petitioner.

Mr. William L. Cary, Sp. Asst. to the Atty. Gen., with whom Assistant Attorney General Clark and Mr. Sewall Key., Sp. Asst. to the Atty. Gen., were on the brief, for respondent.

Messrs. J. P. Wenchel, Chief Counsel, and John M. Morawski, Sp. Atty., both of the Bureau of Internal Revenue also entered appearance for respondent.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

The only question in this case is as to the correctness of the formula used by the Commissioner and upheld by the Board of Tax Appeals in determining the amount to be allowed for the taxable year (1935) on account of depletion of taxpayer's coal mines. The applicable law is found in the Revenue Act of 1934. Section 23(m) of that Act[1] provides, generally, for "a reasonable allowance for depletion * * *." Section 114(b) (4) of the same Act[2] permits the taxpayer to elect whether he will have his depletion allowance computed on the adjusted basis provided in Section 113 or upon the percentage basis specified in Section 114. Petitioner elected the percentage basis, the formula for which is set out in Section 114(b) (4) as follows: "The allowance for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum * * * of the gross income from the property during the taxable year, * * *. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. * * *" It became necessary for the Commissioner to ascertain, therefore, within the meaning of that section, the gross income from the property, upon which to figure the possible 5 per centum deduction, and, similarly, to ascertain "the net income of the taxpayer * * * from the property," upon which to figure the maximum, of 50 per centum thereof, which was allowable for purposes of depletion. It is the Commissioner's computation of the latter item, i. e., the net income of the taxpayer from the property, which is in controversy on this appeal. The amounts of all items pertinent to the determination are undisputed, and only three of them are important on this appeal. These three items are (1) $66,040, profit realized by the taxpayer from the purchase of some of its own outstanding bonds at a cost $66,040 less than their face value; (2) interest payments on its outstanding bonds amounting to $99,982.52; and (3) bond discount and expense of amortization of bonds amounting to $21,840.31. The Commissioner, in making his computation, excluded the profit item of $66,040 because it was derived from a source not connected with the operation of the business, i. e., the extraction of coal. But he did not exclude from his computation the two items which totaled $121,822.83. Instead, he included them with other expense items as a part of the expense of doing business; on the theory that interest on the bonds and the cost of amortization were necessary items of expense. He then deducted the amount of the two items—along with other items of

---

[1] Revenue Act of 1934, 48 Stat. 688, 689, 690, 26 U.S.C.A.Int.Rev.Code, § 23 (m).

[2] Revenue Act of 1934, 48 Stat. 710, 26 U.S.C.A.Int.Rev.Code, § 114(b) (4): "* * * A taxpayer making his first return under this title [chapter] in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made.

If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer, or of any other person if the basis of the property (for determining gain) in his hands is, under section 113, determined by reference to the basis in the hands of such taxpayer, either directly or through one or more substituted bases, as defined in that section."

expense—from the taxpayer's income from the property, and thus arrived at the taxpayer's net income from the property; upon which he calculated the 50 per centum, to which the depletion deduction is limited.[3]

The taxpayer concedes that the Commissioner properly disregarded the profit item of $66,040, in computing its gross income from the property, but contends that he erred in including, in his computation, the $121,822.83 items, as an expense of doing business, since, as it insists, these items are capital expenses and not operating expenses and should occupy precisely the same position in the computation as the profit item of $66,040; and that it would be anomalous and unjust to include the one and disregard the other. Its theory, in other words, is that (1) its outstanding bonds are part of its capital structure; (2) both income and expenses attributable to such bonds are capital charges not attributable to the mining property or to its operation, and bear no relation to the depletion or exhaustion actually sustained; (3) hence both such income, i. e., the $66,040 item, and expenses, i. e., the $121,822.83 items, should have been disregarded in his computations.

■■ The Government, however, justifies the Commissioner's method of computation on an entirely different theory, i. e.: (1) net income from the property, within the meaning of Section 114(b) (4) refers to income derived solely from the mining of coal; (2) income derived from a business or transaction conducted "on the side" should be excluded; (3) the transaction of buying up its own bonds was outside its business of mining coal; (4) hence the profit item of $66,040, derived from another business source, was properly excluded from gross income; (5) on the other hand, the expense items, relating as they did to bonds still outstanding, constituted a proper charge against the business of mining coal; (6) hence they were properly allocated by the Commissioner to the cost of carrying on that business; (7) and were properly deducted in computing net income from the property. In our opinion the Commissioner's action in disregarding the profit item is properly explained by the reasons assigned by the Government, not by petitioner's theory.[4] Consequently, he is guilty of no inconsistency in his different treatment of the profit and expense items.

■ It remains to be determined whether the Commissioner's or the taxpayer's theory, as to treatment of the expense items, was correct. Both parties agree that it is proper to deduct items of overhead expense in computing net income from the property. Both agree that such expenses as officers' compensation, clerical salaries and wages, insurance, and other such items come within the classification of overhead expense. Petitioner is even willing to include in that classification, interest on short-term borrowings. But it draws the line at, or before, interest payments on outstanding bonds and bond discount and expense of amortization of bonds. And it does so on the theory heretofore outlined. In our opinion the Board correctly upheld the Commissioner's determination that the disputed items were properly considered in computing the allowable deduction, pursuant to the provisions of the Treasury Regulations.[5]

■ In Helvering v. Wilshire Oil Co., Inc.,[6] the Supreme Court held that such regulations were clearly within the power of the Commissioner to promulgate under the provisions of Section 23(l);[7] and that the regulatory power thus conferred extended to the percentage depletion allowance under Section 114(b).[8] Specifically, the Court

---

[3] Revenue Act of 1934, 48 Stat. 710, 26 U.S.C.A.Int.Rev.Code, § 114(b) (4).

[4] See Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 320, 55 S.Ct. 174, 79 L.Ed. 383; Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 375, 58 S.Ct. 621, 82 L.Ed. 904; Darby-Lynde Co. v. Alexander, 10 Cir., 51 F.2d 56, 59, certiorari denied, 284 U.S. 666, 52 S.Ct. 40, 76 L.Ed. 564.

[5] U. S. Treas. Reg. 86, Art. 23(m)-1(g) (h). See also, G. C. M. 22,956, 4 Prentice-Hall 1941 Fed. Tax Serv. par. 66,-451, superseding G. C. M. 22,689, 4 Prentice-Hall 1941 Fed. Tax Serv. par. 66,-300; G. C. M. 5104, VII-2 Cum. Bull. 115 (1928); G. C. M. 2315, VI-2 Cum. Bull. 21 (1927). Cf. U. S. Treas. Reg. 74, Art. 221(i).

[6] 308 U.S. 90, 102, 60 S.Ct. 18, 25, 84 L.Ed. 101.

[7] Revenue Act of 1928, § 23(l), 45 Stat. 799, 800, corresponding to § 23(m) of the Revenue Act of 1934, 48 Stat. 688, 689, 690, 26 U.S.C.A.Int.Rev.Code, § 23(m).

[8] Revenue Act of 1928, § 114(b), 45 Stat. 821, corresponding to § 114(b) of the Revenue Act of 1934, 48 Stat. 710, 26 U.S.C.A.Int.Rev.Code, § 114(b).

said: "Here the Congress has not prescribed a precise formula free from all ambiguity. The ambiguous phrase 'net income * * * from the property' was susceptible of various meanings and hence administrative interpretation of it was peculiarly appropriate, as we have said. And there were special reasons growing out of the complex nature of the depletion problem as it is treated for purposes of the income tax, for requiring the Commissioner to make precise the vague elements of that formula." This language is equally applicable to the present case and to the pertinent sections of the 1934 Act. While the items in dispute in the Wilshire case concerned development expenditures rather than bond expenses, nevertheless the decision was made to turn upon the propriety of administrative interpretation in making precise the vague elements of the formula as applied to the admittedly borderline cases between deductible business expenses and non-deductible capital outlays, which arise in the practical administration of the statute.[9] The facts of the present case fall as clearly within that reasoning as do the facts of the Wilshire case itself. We are impressed, also, by the reasoning of several decisions of the Board of Tax Appeals which reach the same result.[10]

The authorities relied upon by petitioner do not require a different result. In fact, they illustrate, strikingly, the truth of the Supreme Court's statement in the Wilshire case,[11] that: "In its general aspects under revenue acts depletion is a problem on which taxpayers, government and accountants have expressed a contrariety of opinions. '2 Paul & Mertens, The Law of Federal Income Taxation (1934), ch. 21; 47 Yale L. Journ. 806 (1938).' Obfuscation in attempted application of its principles under income tax laws has frequently been the result. The Congress itself, as revealed in the history of the revenue acts, has expressed varying philosophies." And they reveal the necessity, pointed out by the Court in that case, of so interpreting Section 23 and Section 114 as to strengthen, rather than to weaken, the administrative powers to deal with the problem equitably and reasonably.[12]

Finally, petitioner contends that if the respondent is permitted to deduct bond interest and amortization of bond discount and expenses in computing the petitioner's net income from the property, the petitioner will be denied a reasonable allowance for depletion as granted by Section 23(m). This contention might be more persuasive if petitioner had chosen to have depletion computed on the adjusted basis provided in Section 113(b).[13] It has, however, elected to be governed by the arbitrary formula specified in Section 114(b)(4). Under that section and under other circumstances it might conceivably recover through depletion allowances an amount in excess of its total capital investment.[14] In

---

[9] Helvering v. Wilshire Oil Co., Inc., 308 U.S. 90, 103, 60 S.Ct. 18, 84 L.Ed. 101. See also, Commissioner of Internal Revenue v. F. H. E. Oil Co., 5 Cir., 102 F.2d 596, 598, affirmed, 308 U.S. 104, 60 S.Ct. 26, 84 L.Ed. 109, which interprets and applies U. S. Treas. Reg. 77, Art. 221 (h).

[10] Mirabel Quicksilver Co. v. Commissioner of Internal Revenue, 41 B.T.A. 401; St. Marys Oil & Gas Co. v. Commissioner of Internal Revenue, 42 B.T.A. 270; Grison Oil Corp. v. Commissioner of Internal Revenue, 42 B.T.A. 1117; Holly Development Co. v. Commissioner of Internal Revenue, promulgated April 3, 1941, 44 B.T.A. ——; Central State Collieries, Inc. v. Commissioner of Internal Revenue, promulgated April 30, 1941, 44 B.T.A. ——, memorandum opinion.

[11] Helvering v. Wilshire Oil Co., Inc., 308 U.S. 90, 102, 103, 60 S.Ct. 18, 25, 84 L.Ed. 101.

[12] Id. at 308 U.S. 103, 60 S.Ct. 25, 84 L.Ed. 101; Paul, Use and Abuse of Tax Regulations in Statutory Construction, 49 Yale L.J. 660.

[13] Cf. Commodore Mining Co. v. Commissioner of Internal Revenue, 10 Cir., 111 F.2d 131, 133: "Petitioner contends that section 23 of the Act of 1934 is substantive in character, and provides in subsection (m) that in all cases of mines there shall be allowed as a deduction a reasonable amount for depletion; and that section 114 is adjective in character, provides the method for computing the allowance, and cannot deprive petitioner of the positive right to an allowance granted in section 23. * * * But all of these provisions must be read and considered together as parts of the whole. Section 23(m) cannot be segregated and construed to grant a right to a deduction to be computed on any basis other than that provided in section 114."

[14] See Cullen v. Commissioner of Internal Revenue, 41 B.T.A. 1054, 1063.

the present case, the result is unfavorable to the taxpayer, but substantial justice requires that it take such burdens as may flow from its election along with the benefits.[15] After all, it must be remembered, "deductions depend upon legislative grace; they are not founded upon general considerations of equity."[16]

Affirmed.

[15] Helvering v. Wilshire Oil Co., Inc., 308 U.S. 90, 99, 60 S.Ct. 18, 84 L.Ed. 101. Cf. Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 321, 55 S.Ct. 174, 178, 79 L.Ed. 383: "The respondent insists that, so applied, the section may work unjust and unequal results; but it is to be remarked that this is likely to be so wherever a rule of thumb is applied without a detailed examination of the facts affecting each taxpayer.";

Helvering v. Mountain Producers Corp., 303 U.S. 376, 382, 58 S.Ct. 623, 625, 82 L.Ed. 907: "The rule being of this sort for obvious purposes of administrative convenience, we must apply it in the simple manner it contemplates."

[16] Commodore Mining Co. v. Commissioner of Internal Revenue, 10 Cir., 111 F.2d 131, 134. See also, Anderson v. Helvering, 310 U.S. 404, 408, 60 S.Ct. 952, 84 L.Ed. 1277.